Judge Underwood
delivered the opinion of the Court.
Cole instituted an action of covenant against Parker, upon the following covenant:
“Know all men by these presents, that I, Thomas Parker, do bind myself to pay to John Cole, the sum of $305, in gold or.silver, as soon as Elijah Mitchell puts Thomas Parker in possession of Swearingen’s title, by deed, to that part of the land said Mitchell sold said Cole; as witness whereunto, 1 set my hand, and affix my seal, this 11th day of October, 1825.
“THOMAS PARKER, [Seal.]”
Parker plead that Elijah Mitchell did not put him in possession of Swearingen’s title, by deed, to that part of the land said Mitchell sold said Cole. Issue was taken thereon, and a trial had. After the plaintiff in the circuit court and defendant here, had concluded his evidence, the defendant in that court, now plaintiff, moved for an instruction to the jury, as in case of a non-suit, which the court refused; verdict and judgment were rendered for Cole, to reverse which, this writ’is prosecuted with supersedeas.
Some motions were made to exclude evidence, but they need not be considered, because the motion to instruct as in case of non-suit, will embrace every thing important to be decided. The only question is this, did Mitchell put Parker in possession of Swear-ingen’s title, by deed ? We think he did not. A patent for 200 acres, dated 2d. December, 1785, to Thomas Swearingen, founded on a land office treasury warrant, issued the 13th of February, 1782, was read in evidence as the origin of the title. Said Swearin- *504 gen’s will, he being of Berkely county, Ya. was then read in evidence. It hears date the 13th of October, 1780. After devising 400 acres to each of his daughters, Drusilla and -Lydia, ‘’to he secured for them in the Kentucky county, by virtue of my (the testator’s) claims for land there,” the will contains this devise, “It is also my will, that all the land that a title shall be obtained for, by virtue of my warrants and claims, on the western waters, that is not otherwise disposed of, be divided among- my said five children, to-wit: (three sons and two daughters,) so that each' boy is to have double the quantity that each girl gets, to them, their heirs and assigns.”
It was proved that the patentee died in 1786, and that his eldest son was named Thomas. The will of Thomas, the patentee’s son, bearing date the 21st June, 1811, was read in evidence; of this will, the 3d and 10th items need only be considered; they are as follows: 3d. “I devise unto Thomas and Lydia, children of my brother Andrew Swearingen, all of the land I hold or claim in the state of Kentucky, under a deed of trust, executed to me by the said Andrew Swearingen, to them and their heirs forever.” 10th. “The residue of my estate, both real and personal, of what nature or kind soever it may be, not herein particularly disposed of, I desire should be equally divided, one moiety whereof I give to my sister Drusilla and her heirs forever. The other moiety I give to the children of my brother Andrew, viz: Thomas and Lydia, and their heirs forever. A deed of mortgage was given in evidence, dated 30ih October, 1809 executed by Andrew Swearingen to his brother Thomas, conveying to said Thomas all his, said Andrew’s right, title and interest in many tracts of land, and among them, the tract of 2000 acres patented as aforesaid. After the death of Thomas, Andrew' conveyed all the lands mentioned in his mortgage to his children, Thomas and Lydia, in pursuance of the will of his" brother, staticg in the conveyance, that he was unable, to redeem the mortgage. Thomas Swearingen, Andrew’s son, by his attorney in fact, William Hughes, and the daughter Lydia and her husband, conveyed to Elijah Mitchell the land which he sold to Cole, being part of the *505 tósid tract for 2000 acres. Mitchell executed a deed purporting to convey to Parker, and acknowledged it -in the proper office, where it was recorded, and that Wm. Hughes tendered said Mitchell’s deed to Parker, and that he refused to accept it-.
There are several insurmountable objections to this derivation of title. The warrant and entire tract of 2000 acres, was acquired subsequéht to the date off the patentee’s will. The statute abolishing the right of primogeniture, did not take effect until the 1st of January, 1787. It follows, upon well settled principles, that the tract of 2000 acres, on the death of the patentee, in 1786, descended to his son Thomas. See Holloway and King vs. Buck, IV. Litt. 295. It does not appear how Andrew Swearingen acquired any interest in this tract. He may have asserted some claim under the will of his father. If he did, it does not appear that this tract, or any part of it, was allotted to him in the division provided for by the will. We do not perceive whence Andrew derived any title to the tract.- He only purports to mortgage his interest in it. If he had no interest, nblhing passed to the mortgagee, Thomas; consequently, no interest in this trafct passed undfer the 3d item in his will, to the children of Artdrevv» The 10th item of the will governs this tract, under the facts exhibited. The testator’s sister, Drusilla, and her heirs, under this provision of the will, are entitled to a moiety. It is not shown that any division was ever made, or that Drusilla and her heirs have parted with their title. Consequently, the deeds from Andrew Swear-ingen’s children, Thomas and Lydia, did not invest Mitchell with a full title, and he was, therefore, unable to perform the condition upon which the payment of the money depended. His deed, even if the delivery had been good, was no compliance with the-condition, and hence the instruction, as in case of a SiOn-suit, should have beeti given.
It is also, proper to remark, that if Mitchell's deed bad been good, it ought to have been alleged in the declaration, that it was tendered and refused, instead of avering performance in the words of the covenant. Tender and refusal is equivalent in its-effects, in mosfc- *506 case?, to performance, but there is a propriety in pleading, which ought to be observed, which consists in notifying the adversary of the true nature of the facts upon which he is to be rendered liable, so that he may come prepared to contest them. Under averment-' of performance, the parly cannot give in evidence excuses for non-performance.
John Trimble, for plaintiff; T. A. Marshall, for defendant.
The judgment of the circuit court is reversed, the-verdict set aside, and tiie cause remanded for a new trial to be had, not inconsistent with this opinion.
The plaintiff in error must recover his costs.